**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LOUIS S. GRANT, JR., <br><br> Plaintiff, <br><br> v. <br><br> JOHN MANFREDA, ESQ., former Administrator C.T.A. of the Estate of Louis S. Grant, Sr., <br><br> Defendant. | Civil Action No. 18-10672 (RK) (TJB) <br><br> **OPINION** |

**KIRSCH, District Judge**

    **THIS MATTER** is before the Court by way of John Manfreda, Esq.'s ("Defendant")
Motion for Summary Judgment. (ECF No. 80 ("Def. Mot").) Plaintiff Louis S. Grant, Jr.
("Plaintiff" or "Junior") opposes this Motion. (ECF No. 80-3 at 15[1] ("Pl. Opp.").) This motion is
decided without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil
Rule 78.1(b). The question before the Court is purely legal since the parties do not assert issues of
genuine of material fact. Instead, on summary judgment, Defendant asserts three affirmative
defenses: New Jersey's entire controversy doctrine, *res judicata*, and collateral estoppel.[2]

---

[1] Unless otherwise stated, all page references refer to the ECF PDF pagination located in the header of the
documents.

[2] The Court notes for the record that out of these three defenses, only *res judicata* and collateral estoppel
were raised as affirmative defenses in Defendant's Answer. (*See generally* ECF No. 5.) However, given
that the issue of waiver was not addressed by Plaintiff in his Opposition, the Court considers this defense
given that—in addition to the fact that Plaintiff does not object to same—this litigation imposes other
considerations, which include: (1) a lengthy litigation without the filing of any dispositive motion; and (2)
the reassignment of this case to three different District Court judges. *See Isko v. Engelhard Corp.*, No. A-
6588-04T3, 2006 WL 1716139, at *6 (N.J. Super. Ct. App. Div. June 23, 2006) (in finding the trial court
had erred on other grounds in granting partial summary judgment on the entire controversy doctrine, noting
*sua sponte* that the defense had not been properly raised in defendant's answer).

Plaintiff is the son and a beneficiary to the estate of his deceased father, Louis S. Grant, Sr. ("Senior") who died in 2001. Defendant is a lawyer who was court-appointed as Administrator and lawyer to Senior's estate sometime in 2008, well-after much family strife and costly state court litigation. *See In re Estate of Grant*. No. A-3658-11T3, 2013 WL 2300994, at *1 (N.J. Super. Ct. App. Div. May 28, 2013) (appended to Defendant's Motion at Ex. B) ("*Grant III*"). This latest litigation—now in federal court—was commenced more than six years ago.

The litigation surrounding Senior's estate can only be described as never-ending. Plaintiff—previously against his seemingly-estranged siblings[3]—waged unrelenting legal challenges at every turn, presumably because Plaintiff does not like the legal decisions which have not gone his way. As but one example, in the subject Complaint, (ECF No. 1 ("Compl.")), Plaintiff admits that he "contested each and every accounting, including the final accounting." (*Id*. ¶ 11). Plaintiff's Complaint now asserts causes of action against Defendant in federal court relating to Defendant's administration of Senior's estate, claiming (1) breach of fiduciary duties (Count I) and (2) legal malpractice (Count II).

Regrettably, Plaintiff's legal strategy can only be characterized as scattershot and blunderbuss. Plaintiff's Complaint is replete with alleged breaches by Defendant, including some sixteen (16) separate but interrelated breaches of fiduciary duties and then some eighteen (18) alleged bases of legal malpractice (which themselves are almost entirely duplicative of the alleged breaches of fiduciary duty in Count I). (Compare Compl. ¶ 71, *with id*. ¶ 76.) All of these breaches

---

[3] The Court makes this inference by virtue of the following two facts. *First,* Plaintiff's sisters alleged Plaintiff's undue influence over Senior in the original will contest. *See Grant III*, at *1. *Second,* Plaintiff, in the trial proceedings in *Grant III*, argued that Defendant improperly administered Senior's estate because, *inter alia*, Defendant had allowed one of Plaintiff's sisters to live on one of the estate "without paying rent." *See Grant III*, at *2.

occurred more than a decade ago, for an estate where the decedent died some twenty-four years ago. Most of these bases have been raised and rejected, sometimes repeatedly, in prior state court litigations. *See generally In re Estate of Grant,* No. A-2014-04, 2007 WL 1284913 (N.J. Super. Ct. App. Div. May 3, 2007) ("*Grant I*"); *In re Estate of Grant*, 2010 WL 4940031 (N.J. Super. Ct. App. Div. Dec. 7, 2010) ("*Grant II*"); *Grant III*.   The series of state court decisions chronicle, in some detail, the protracted litigations of this sad family saga. *See generally id*.

For the reasons below, Defendant's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part.**

## I.    <u>JURISDICTION</u>

The Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1332 given that Plaintiff is a resident of Pennsylvania, (Compl. ¶ 4), and Defendant is a resident of New Jersey, (*See* ECF No. 82 ¶ 3; ECF No. 83 ¶ 3).[4] The amount in controversy exceeds $75,000. Venue is proper here pursuant to 28 U.S.C. § 1391(b)(2).

## II.    <u>BACKGROUND</u>

### A.  FACTS

The below facts of this case are undisputed and surround Plaintiff's continual dissatisfaction with Defendant's administration of Senior's estate which commenced in 2008. On February 13, 2001, Senior passed away. (ECF No. 80 at 4 ("DSUMF") ¶ 1.) Protracted state court

---

[4] The motion for summary judgment is the first dispositive motion before the Court. Upon its review of the pleadings in deciding same, the Court was unable to ascertain the domicile of Defendant. (*See* ECF No. 81.) Accordingly, the Court administratively terminated the pending motion for summary judgment and issued an order directing the parties to show cause as to why complete diversity exists. (*See id*.) The parties submitted certifications that Defendant is domiciled in Somerville, N.J. and has "resided [there] since March of 1984."(ECF No. 83 ¶ 3.) The parties have shown complete diversity, and the Court now decides the motion for summary judgment.

litigation ensued which involved both the period before Defendant's appointment as Administrator C.T.A. (pre-2008) and afterwards (post-2008). The Court describes the relevant state court litigation below, divided by each time period.

### B. PRE-2008 LITIGATION

#### a. *Grant I*

Senior executed a will on April 16, 1998. (*Id*.) Plaintiff initiated an action in state court seeking to admit the 1998 will into probate.[5] *See Grant I*, at *1. In answer and counterclaim, the *Grant I* defendants—Plaintiff's sisters—Virginia Liotta and Nancy Grant challenged Senior's testamentary capacity and Plaintiff's alleged undue influence over Senior. *Id.* A nine-day trial ensued, and ultimately, the Honorable John Pursel, J.S.C. upheld the validity of the 1998 will and dismissed Plaintiff's sisters' counterclaim on November 8, 2004. *See id.*; *see also Grant II*, at *2. Judge Pursel's decision was affirmed by the Appellate Division on May 3, 2007. *See Grant I.* There, the Appellate Division affirmed, *inter alia*, the trial court's finding that there was no undue influence in connection with the will executed on April 16, 1998. *See id.* The will was probated. *See id.*

### C. POST-2008 LITIGATION

#### a. Defendant's Appointment as Administrator C.T.A. of Senior's Estate

On March 18, 2008, an order disqualifying Plaintiff and his sisters as executors of Senior's will was entered, and Defendant was appointed as Administrator C.T.A. and attorney for Senior's estate. *Grant II*, at *1; (ECF No. 80-3 at 2 ("PASUMF") ¶ 6.) Up until this point, Plaintiff was a

---

[5] While *Grant I* and *Grant II* are not appended to the Motion to Summary Judgment as exhibits, *Grant II* is referenced in Defendant's Statement of Undisputed Material Facts. (*See*, *e.g.*, DSUMF ¶¶ 4–5.) Both *Grant I* and *Grant II* are referenced in *Grant III*, which itself is appended to the Motion to Summary Judgment as Exhibit B. Accordingly, the *Grant I* and *Grant II* decisions are incorporated by reference into the summary judgment record.

fiduciary of Senior's estate. *See Grant III*, at \*4.

### b.  *Grant II*

Two years later, the Appellate Division consolidated two appeals of Judge Pursel's decision that had been calendared back-to-back. *Grant II*, at \*1. Specifically, these appeals concerned the following: (1) funds Plaintiff wished to be declared an ademption by satisfaction and (2) a decision by another judge which involved, *inter alia*, Plaintiff's interests in a business partnership. *Id.* The Appellate Division reversed in part and remanded in part. *Id.* at \*6.

### c.  *Grant III*

In fighting amongst the siblings continued. (DSMUF ¶ 6); *see also Grant III*, at \*1. As is relevant to this litigation, on July 21, 2011, Defendant filed a third amended final informal accounting of Senior's estate, which covered the period of April 16, 2008 to June 30, 2011. (*See* Ex. C to Def. Mot.); *see also Grant III*, at \*5–6. At the time of the third amended final informal accounting's filing, Senior's Estate had assets of $151,417.17, but it still owed $286,603 in federal and state taxes, real estate taxes and counsel fees. (DSUMF ¶ 14.)

In response to Defendant's third amended final informal accounting, Plaintiff filed exceptions to the third amended final informal accounting. (DSUMF ¶ 16; *see also* Ex. D. to Def. Mot.) These exceptions were as follows:

- Point I: The Administrator's application for approval of the accounting and recommended distribution scheme was submitted in derogation of the comprehensive estate plan, *inter vivos* distribution, testator's intent, and the clear and ambiguous language of Senior's last will and testament;
- Point II: Senior's estate plan, together with his testamentary intent as expressed in his last will and testament, (1) governed the payment and allocation of estate death taxes and (2) the administration expenses were contrary to the recommendation of the Administrator;
- Point III: Defendant's determination that the insolvency of the Estate was caused by Plaintiff was spurious, flawed, and contrary to the controlling material facts;
- Point IV: The majority fiduciaries and Defendant failed to adhere to statutory duties involving the administration and accounting of Senior's estate in conformance with the

estate plan and testamentary intent of Senior and further failed to utilize ordinary care, skill, and diligence;

- o Defendant's assignment of a de facto fiduciary status with full authority over Senior's estate, and Defendant's application of equitable estoppel, was specious and without legal or factual support;
- o The application of the doctrine of unjust enrichment was misapplied and in direct derogation of the intent of Senior;
- Point V: The accounting filed with the court contains errors requiring correction and reformation by the court;
- Point VI: The attorneys' fees proposed to be collected directly from Plaintiff, and not from Senior's estate, was without authority and in violation of R. 4:42-9;
- Point VII: Attorneys' fees cannot be awarded for that portion of legal services performed by Defendant for litigation which did not benefit Senior's estate and was not encompassed for an award pursuant to R. 4:49-2;
- Point VIII: Plaintiff's transfer of the Senior's annuity previously in his sole name should satisfy any award of attorneys' fees to be apportioned to him;
- Point IX: That the matter before the court could not properly proceed to adjudication in a summary manner, but due to the assumption of facts and further material conflicting facts mandated a hearing pursuant to the authoritative case law.

(Ex. D. to Def. Mot. at i–ii.) Thus, specifically during the course of the *Grant III* proceedings, the trial court considered the contention that Defendant failed to "utilize ordinary care, skill, and diligence" during the course of his administration of the Estate. (*See id.*)

The trial court determined that Senior's estate was insolvent and that the beneficiaries would be required to pay Senior's estate's remaining estate taxes and expenses in proportion to the assets they had received. *See Grant III*, at *3. The judge reasoned that since Plaintiff received most of the non-probate assets through *inter vivos* transfers—which resulted in the majority of Senior's estate taxes—Plaintiff was responsible to pay his *pro rata* share of those taxes. *See id.* The judge also found that Defendant was entitled to fees for representing Senior's estate as an attorney and awarded Defendant's law firm fees totaling $125,392.50. (DSUMF ¶ 19.) Plaintiff moved for reconsideration, which was denied by the trial court on March 5, 2012. *Grant III*, at *1. Plaintiff appealed both (1) the denial of his motion for reconsideration as well as (2) the trial court's entry of the January 24, 2012 order which approved the third amended final informal accounting

by Defendant, which decided the amounts of estate taxes to be paid by each estate beneficiary, and awarded counsel fees. *Id.* at *1. The Appellate Division made clear that Senior's estate's considerable expenditures were due, in part, to Plaintiff's (and his siblings') litigation and improper administration of Senior's estate *prior* to Defendant's retention, which led to insolvency. *Grant III*, at *5. As further noted by the Appellate Division, it found the award of counsel's fees to be appropriate "for handling this extended and hotly-disputed probate matter." *Id.* at *6. In pertinent part, the Appellate Division wrote:

> As is clear from [Defendant's] accounting, the estate paid counsel fees attributable to the extensive prior probate litigation, including approximately $177,000 in fees to [Plaintiff's] attorneys. The estate also owed taxes and penalties, due in part to the three sibling administrators' failure to properly file returns prior to 2005, and in part to mistakes that Junior made when he filed the 2005 tax return. Finally, we will not disturb a trial court's award of counsel fees . . . .

> . . .

> We find no abuse of Judge Rubin's discretion in the award of a fee to [Defendant's] law firm for handling this extended and hotly-disputed probate matter.

*Grant III*, at *5–6.

In its written decision affirming the trial court, the Appellate Division noted that "many of [Plaintiff's] arguments were asserted with no supporting citations to the record" and also concluded "that they are all without sufficient merit to warrant discussion in a written opinion" pursuant to New Jersey Court Rule 2:11-3(e)(1)(E). *Id.* at *5. The Appellate Division noted that Plaintiff had not established "by legally competent evidence, any material factual disputes, and that an evidentiary hearing was not required. As is clear from [Defendant's] accounting, the estate paid counsel fees attributable to the extensive prior probate litigation, including approximately $177,000 in fees to [Plaintiff's] attorneys." *Id.* Both the trial court's decision denying Plaintiff's

motion for reconsideration and the trial court's decision approving the third amended final informal accounting were affirmed. *Id.* at *6.

### d. **Lawsuit in Federal Court**

On June 15, 2018—around five years after the last dated decision in the state court litigation was issued in *Grant III*—Plaintiff filed the subject Complaint against Defendant in federal court in this District. (*See* ECF No. 1.) Invoking this Court's jurisdiction under 28 U.S.C. § 1332, Plaintiff sets forth two state law causes of action: Breach of Fiduciary Duties (Count I) and Legal Malpractice (Count II). Defendant filed his Answer without filing a motion to dismiss on October 12, 2018. (*See* ECF No. 5.)

Litigation surrounding discovery ensued for several years, and this case was first reassigned on April 11, 2022. (*See* ECF No. 61.) The case was later reassigned to the undersigned on May 15, 2023. (*See* ECF No. 72.) After an unsuccessful mediation presided over by a retired judge, (*see* ECF No. 76), Defendant filed the present motion for summary judgment, (*see* ECF No. 80), which was administratively terminated upon an Order of the Court in order that the parties show the existence of complete diversity, (*see* ECF No. 81.) With the parties having shown the existence of complete diversity, (*see* ECF Nos. 82 and 83), the Court now decides the motion for summary judgment, which is fully briefed and ready for disposition.

## III.   **LEGAL STANDARD**

A motion for summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A factual dispute is 'material' if it 'might affect the outcome of the suit under

the governing law.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson*, 477 U.S. at 248).

"The Court must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party." *Razak*, 951 F.3d at 144 (citing *Anderson*, 477 U.S. at 255); *see also Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008). Summary judgment "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). While a "judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial[,]" *Anderson*, 477 U.S. at 249, a non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citations omitted). A non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## IV.    DISCUSSION

### A.    LEGAL STANDARDS

The Court now turns to the motion for summary judgment and the three affirmative defenses asserted by Defendant that he argues entitle him to summary judgment. Given that Defendant relies on the same three defenses for dismissal of both Counts of the Complaint, the Court recites the relevant legal standards before applying each of these doctrines.

#### a.    Entire Controversy Doctrine

The entire controversy doctrine "reflects a 'long-held preference that related claims and matters arising among related parties be adjudicated together rather than in separate, successive,

fragmented, or piecemeal litigation.' . . . ." *Schindel v. Feitlin*, No. 2888-19, 2021 WL 2391583, at *2 (N.J. Super. Ct. App. Div. June 11, 2021) (internal citations omitted). As codified in New Jersey Court Rule 4:30A, the entire controversy doctrine "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." *Id.* (internal citations omitted). Accordingly, the entire controversy doctrine "extinguishes any subsequent federal-court claim that could have been joined, but was not raised in the prior state action . . . ." *Siljee v. Atl. Stewardship Bank*, No. 15-1762, 2016 WL 2770806, at *7 (D.N.J. May 12, 2016).

The entire controversy doctrine precludes claims even when they are "separate and independently cognizable cause[s] of action[.]" *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 137 (3d Cir. 1999). Importantly, the entire controversy doctrine is constrained in that "it 'does not apply to unknown or unaccrued claims.'" *Schindel*, 2021 WL 2391583, at *3. In addition, if a party demonstrates that in the prior forum, he was not "afford[ed] 'a fair and reasonable opportunity to have fully litigated' the claim[,]" the entire controversy doctrine "may [be] avoid[ed]." *Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C.*, 203 A.3d 133, 138 (N.J. 2019); *see also Schindel*, 2021 WL 2391583, at *3.

As stated by the Supreme Court of New Jersey, in deciding whether multiple claims must be asserted in the same action, a court's initial inquiry "is whether [the claims] 'arise from related facts or the same transaction or series of transactions.'" *Dimitrakopoulos,* 203 A.3d at 144 (quoting *DiTrolio v. Antiles*, 662 A.2d 494, 502 (N.J. 1995)). Further, "'the determinative consideration is whether distinct claims are aspects of a single larger controversy because they arise from interrelated facts.'" *Id.* (citing *DiTrolio*, 662 A.2d at 504).

**b. _Res Judicata_**

"Under the doctrine of _res judicata_, 'the parties to a suit and their privies are bound by a final judgment and may not relitigate any ground for relief which they already have had an opportunity to litigate—even if they chose not to exploit that opportunity—whether the initial judgment was erroneous or not.'" _Barnes v. Trenton State Prison Med. Dep't_, No. 09-1604, 2010 WL 55488, at *3 (D.N.J. Jan. 7, 2010) (internal citations omitted). To determine whether a state court judgment precludes subsequent federal court action, federal courts "must look" to the law of the state that adjudicated the original action. _Greenleaf v. Garlock, Inc._, 174 F.3d 352, 357 (3d Cir. 1999). New Jersey law, like federal law, requires three elements for the application _res judicata_: (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one. _Watkins v. Resorts Int'l Hotel & Casino, Inc._, 591 A.2d 592, 599 (N.J. 1991) (internal citations omitted). However, if "a claim could not have been presented in the first action, then it will not be precluded in a later action." _Id._

**c. Collateral Estoppel**

The doctrine of collateral estoppel "bars relitigation of any issue [] actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." _State v. Gonzalez_, 380 A.2d 1128, 1131 (N.J. 1977) (internal citations omitted). Under New Jersey law, the party asserting collateral estoppel must show:

> (1) The issue to be precluded is identical to the issue decided in the previous proceeding . . . (2) the issue was actually litigated in the prior action . . . (3) the court in the prior proceeding issued a final judgment on the merits . . . (4) the determination of the issue was essential to prior judgment . . . and (5) the party against whom the

doctrine is asserted was a party to or in privity with a party to the
earlier proceeding.

*In Re Dawson*, 641 A.2d 1026, 1034–35 (N.J. 1994).[6]

The Court's inquiry does not end with these five elements. Collateral estoppel is an
equitable judicial doctrine and as such is "not to be applied if there are sufficient countervailing
interests." *Matter of Coruzzi*, 472 A.2d 546, 551 (N.J. 1984). The Court will not preclude a party
litigating an issue when it would be "'unfair to do so.'" *Allen v. V & A Bros.*, 26 A.3d 430, 444
(N.J. 2011) (internal citations omitted). While New Jersey's collateral estoppel jurisprudence does
not mandate that courts allow equitable considerations to "overcome the ordinary preclusive
effects of prior judgments[,]" *Gannon v. Am. Home Prod., Inc.*, 48 A.3d 1094, 1107 (N.J. 2012),
courts regularly rely on fairness considerations to inform the collateral estoppel analysis. *See*
*Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1009–10 (N.J. 2006).

## B. COUNT I - BREACH OF FIDUCIARY DUTIES

In Count I, Plaintiff alleges that Defendant—in his capacity as Administrator C.T.A of
Senior's Estate—breached his fiduciary duties which required Defendant to adhere to Senior's
Last Will and Testament and to discharge administrative duties related to Senior's estate. (Compl.
¶¶ 69–70.) At summary judgment, Defendant asserts that Plaintiff's claims are barred by New
Jersey's entire controversy doctrine, *res judicata*, and collateral estoppel. Because Plaintiff could
have brought his breach of fiduciary duty cause of action in the underlying probate action—and
already did—Plaintiff's breach of fiduciary duty claims are barred under the entire controversy
doctrine, *res judicata*, and collateral estoppel doctrines. The claims in Count I are a mere recasting
of claims already litigated at the state court level. Therefore, the motion for summary judgment as

---

[6] A federal court asked to give preclusive effect to a state court judgment applies that state's law. *See*
*Greenleaf*, 174 F.3d at 357.

to Count I is **GRANTED.**

First, the breach of fiduciary duties cause of action (Count I) is barred under the entire

controversy doctrine because these underlying claims were actually raised—and rejected—at the

probate court level. In this action, Plaintiff raises the following sixteen (16) allegations:

> a. Failure to reasonably and properly adhere to the Last Will and Testament of the decedent, together with the testator's estate plan, including the proper administration of his *inter vivos* transfers;
> b. Failure to reasonably and properly evaluate, address, and administer the *inter vivos* transfer to the Plaintiff from the decedent;
> c. Failure to reasonably address and administer the assets and liabilities of the Estate to the detriment of the Estate and the Plaintiff as an individual beneficiary;
> d. Failure to reasonably and properly address federal estate taxes to the detriment of the Estate and the Plaintiff as an individual beneficiary;
> e. Failure to reasonably, properly and timely file and remit payment of federal taxes in order to avoid further accumulations of penalties and interest to the detriment of the Estate and the Plaintiff as an individual beneficiary;
> f. Failure to reasonably and properly address and resolve the federal estate tax liens filed against the Estate and the Plaintiff individually;
> g. Failure to reasonably and properly avoid the filing of a federal tax lien, which tax lien was filed against the Estate and the Plaintiff individually;
> h. Failure to reasonably, properly and timely remit payment to the State of New Jersey for estate
> inheritance tax arrearages to the detriment of the Estate and the Plaintiff as an individual beneficiary;
> i. Failure to reasonably and properly prioritize payment of the liabilities of the Estate;
> j. Failure to reasonably and properly administer the Estate by providing distribution advancement to beneficiaries Nancy Grant and Virginia Liotta which resulted in the diminishment of liquid assets of the Estate and further contributed to the insolvency of the Estate;
> k. Failure to reasonably and properly administer the Estate and expeditiously market and sell the real estate owned by the Estate;
> l. Failure to reasonably and properly prioritize and remit payment upon the real estate taxes resulting in an accumulation of interest, penalties, and further, the issuance of tax sale certificates;

m. Failure to reasonably and properly sell real estate property and further address the federal tax liens and related legal issues relating to the sale of the real property of the Estate;

n. Failure to reasonably and properly administer the Estate by requesting and receiving an advancement of attorney's fees prior to the full payment and satisfaction of federal and state estate taxes in New further contributed to the insolvency of the Estate;

o. Failure to reasonably and properly administer the Estate to preserve the Estate from insolvency in derogation of the Last Will and Testament of the decedent, and his estate plan; and

p. Failure to reasonably and properly administer the Estate and adhere to the Last Will and Testament of the decedent and his estate plan, causing the assignment of 97.8% of the Estate debt to the Plaintiff.

(Compl. ¶ 71.) These same claims were raised in the probate proceedings in *Grant III*. Specifically,

Plaintiff argued in his appellate brief in the *Grant III* litigation that Defendant "failed to utilize

ordinary care, skill, and diligence[]" required of him in the administration and accounting of

Senior's estate. *Grant III*, at *5. More specifically, in his appellate brief to the Appellate Division,

Plaintiff further argued that:

the Court's adjudication of the accounting and distribution further encompasses the evaluation and of the fiduciary duties in regard to the administration of the Estate and, further, the accounting and distribution recommendations . . . . Since the overwhelming evidence in this matter reveals the abject failure of fiduciary duties of the majority, and further, Defendant's failure to timely address the estate taxes, and conform to the Testator's intent regarding his Last Will and Testament and non-probate assets, failure to properly collect rental fees, etc., all were factors instrumental in causing the alleged insolvency of the Estate.

(Ex. A. to Def. Mot. at 134.) Plaintiff's claims were denied by the trial court, and Plaintiff filed a

motion for reconsideration which was also denied by same. *See Grant III*, at *1. The trial court

was subsequently affirmed. *See Grant III*.

The fact that these claims were also specifically raised on appeal by Plaintiff and addressed

by the Appellate Division further cements the uncontestable fact that these claims were fully and

fairly litigated and rejected by courts of competent jurisdiction. Instead, as is his apparent want, Plaintiff is merely dissatisfied with the results he received in state court. The Appellate Division in *Grant III* essentially rejected each of Junior's claims against Defendant—the de facto same claims he attempts to re-litigate here in Count I.

Overall then, these claims not only could have been raised in the underlying state court litigation, but they were raised. Both the trial and appellate courts in *Grant III* found that Plaintiff failed to provide support for these claims and soundly rejected them. *See id.* Plaintiff's claims for breach of fiduciary duties are therefore barred by the entire controversy doctrine. *See Ehrlich v. McInerney.* No. 17-879, 2017 WL 6371300, at *15 (D.N.J. Dec. 13, 2017) (at the motion to dismiss stage, finding that plaintiff's breach of fiduciary duty claim brought by an estate's heir against the estate's temporary administrator was barred under the entire controversy doctrine, where *inter alia*, the probate case involved explicit references to breach of fiduciary duty); *Crane v. Crane*, No. 23-1527, 2024 WL 1070284, at *6 (D.N.J. Mar. 12, 2024) (finding at the motion to dismiss stage that plaintiff's claims would be barred by the entire controversy doctrine because they arose "from the same transaction as the claims in the probate court[,]" and plaintiff had "the opportunity to litigate his current claims at the state level and allowing his claims in this Court would undermine the principles underlying the entire controversy doctrine: completeness in litigation, fairness to the parties, and efficiency." (internal citations omitted)).

In addition, even if New Jersey's entire controversy doctrine did not apply, both the *res judicata* and collateral estoppel doctrines similarly foreclose this re-litigation of Count I. In New Jersey, three elements are required for the application *res judicata*: (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of

the same transaction or occurrence as the claim in the earlier one. *Watkins*, 591 A.2d at 598. While Plaintiff disputes the applicability of all three elements of *res judicata*, he provides the Court with scant arguments against its application. (*See* ECF No. 80-3 ("Pl. Rep.") at 23.) For example, Plaintiff presents no arguments as to why the Appellate Division's decision in *Grant III* was not a final decision on the merits, and this Court finds no basis to conclude otherwise.

The Appellate Division's judgment was final and on the merits—affirming the trial court and its order which, *inter alia*, adopted the third amended final informal accounting, decided the amounts of estate taxes to be paid by each estate beneficiary and affirmed the award of counsel fees. *See Grant III,* at *1. To the second element, while Defendant was not a party to the previous action, he was in privity as the Estate's executor since he was "the virtual representative" and "actually control[ed] the litigation." *Allen*, 26 A.3d at 445 (further noting that New Jersey has left the concept of privity as "necessarily imprecise"); *see also* Restatement (Second) of Judgments § 39 ("A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party."). Again, Plaintiff makes no argument as to why Defendant was not in privity for the purposes of these doctrines. Where the claims at issue in the underlying state court actions involved Defendant's duties to Senior's estate and its beneficiaries and were explicitly raised within the proceedings—and Defendant was able to respond and he did respond—Defendant is in privity for the purposes of these doctrines. Third and finally—and as addressed in great detail above with the Court's analysis of the entire controversy doctrine—the breach of fiduciary claim grew out of the same transaction or occurrence as the claim in *Grant III* given that it was a part of the same claim because it was *actually raised* in that prior proceeding. This issue was previously litigated. *Res judicata* applies.

Collateral estoppel is equally applicable here. To assert the defense of collateral estoppel in New Jersey, the movant must show:

> (1) The issue to be precluded is identical to the issue decided in the previous proceeding . . . (2) the issue was actually litigated in the prior action . . . (3) the court in the prior proceeding issued a final judgment on the merits . . . (4) the determination of the issue was essential to prior judgment . . . and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*In Re Dawson*, 641 A.2d 1026, 1034–35 (N.J. 1994). As noted above, not only is this issue identical to an issue that was actually litigated by the parties and ultimately decided in the state court proceedings—thereby satisfying elements one and two—but a final judgment on the merits was issued by the Appellate Division in *Grant III*, consequently satisfying element three. As to element four, the central thrust of the Appellate Court's affirmance in *Grant III* was a rejoinder of all of Junior's claims which, at their essence, were claims that Defendant serially breached his fiduciary duties to Senior's estate.[7] Turning to the final element, Defendant was in privity with the parties to the earlier proceeding as an attorney to the Estate as well as the Administrator C.T.A. *See Allen*, 26 A.3d at 445; *see also* Restatement (Second) of Judgments § 39. Given that these issues were actually litigated, and the collateral estoppel jurisprudence does not mandate that courts allow equitable considerations to "overcome the ordinary preclusive effects of prior judgments," *Gannon*, 48 A.3d at 1107, the Court does not find that any fairness considerations outweigh the effect of a prior final judgment. Collateral estoppel therefore also applies and bars these claims.

Therefore, summary judgment as to Count I must be granted given that the claims are

---

[7] Indeed, Plaintiff's appellate brief itself in *Grant III* appears to acknowledge this fact, noting that "the Court's adjudication of the accounting and distribution further encompasses the evaluation and of the fiduciary duties in regard to the administration of the Estate and, further, the accounting and distribution recommendations . . . ." (Ex. A to Def's Mot. at 134.)

barred by New Jersey's entire controversy doctrine, *res judicata*, and collateral estoppel. Count I is dismissed with prejudice.

### C. COUNT II - LEGAL MALPRACTICE

In Count II, Plaintiff alleges that Defendant had a duty to the Estate—and to Plaintiff as a beneficiary of the Estate—to perform Defendant's responsibilities adequately and reasonably within the accepted standards of care, skill, and knowledge of an attorney. Plaintiff alleges that Defendant's numerous acts and omissions caused Plaintiff various injuries, including Plaintiff's incurring waste; the accumulation of debt via unpaid federal and estate taxes; penalties, and interests; real estate tax arrearages; penalties; interest; tax certificate sales; loss of profits; expenses; and individual indebtedness—all of which ultimately resulted in the Estate's insolvency. (*See* Compl. ¶¶ 76–77). Again, at summary judgment, Defendant asserts the three affirmative defenses of New Jersey's entire controversy doctrine, *res judicata*, and collateral estoppel that he argues bar Count II. For the reasons below, the motion for summary judgment as to Count II is **GRANTED in part** and **DENIED in part**.

#### a. <u>Entire Controversy Doctrine</u>

While the entire controversy doctrine is not inapplicable to legal malpractice causes of action *per se*, the Supreme Court of New Jersey has expressed its disfavor towards the application of entire controversy doctrine in this context, stating that the application of the entire controversy doctrine in this context "raises special concerns . . . ." *Dimitrakopoulos*, 203 A.3d at 144. Accordingly, the Court is constrained to find that the entire controversy doctrine to Count II is inappropriate.

In this decision, the Court finds guidance from the Supreme Court of New Jersey itself, which addressed a similar factual scenario to that of the case at bar. *See Higgins v. Thurbur*, 14

A.3d 745 (N.J. 2011). *Higgins* involved a probate action arising from a settlement of an account pursuant to R. 4:87-1 where plaintiff asserted legal malpractice against attorneys who had represented the estate in probate action. *Id.* at 746. As summarized by the New Jersey Supreme Court, the Appellate Division had found that although the potential legal malpractice claim "may have been raised in a previous Bergen County probate proceeding . . . [the Appellate Division] was unable to conclude that plaintiffs had a 'full and fair opportunity to litigate those claims or that it would otherwise be equitable to bar this subsequent suit [under the entire controversy doctrine].'" *Id.* In affirming the Appellate Division, the Supreme Court of New Jersey held:

> An action to settle an account on an estate trust is a formalistic proceeding, unique to probate. *See* R. 4:87–1(a). Its stylized format involves a line-by-line review on the exceptions to an accounting. In the context of this and like proceedings in probate, the entire controversy doctrine is out of place . . . . The Appellate Division in the present case rightly detected that it would be anomalous to assume that Thurber's intervention in the specialized probate accounting proceeding that focused on the executor somehow converted the proceeding into an action binding as to any and all other potential actions in respect of other parties . . . . While it certainly may be permissible for a chancery court to expand a probate proceeding to encompass a claim of legal malpractice, that was not done here.

*Id.*

Overall, the Court is constrained here—both by the special considerations required of the entire controversy doctrine in the legal malpractice context and by the full and fair litigation requirement of the entire controversy doctrine. *Dimitrakopoulos*, 203 A.3d at 138 (reversing and remanding the Appellate Division where it applied the entire controversy doctrine, noting that no findings as to when the claims accrued nor whether plaintiff was able to fully and fairly litigate the legal malpractice claims in the underlying action were made); *Schindel*, 2021 WL 2391583, at *4 (in distinguishing *Schindel* from *Higgins,* noting the importance of the difference between the

formalistic proceeding of an accounting and the "full-scale assault" on the 2016 will which justified the application of the entire controversy doctrine because the underlying proceedings had been fully and fairly litigated.) As the entire controversy doctrine "raises special concerns when invoked in the setting of legal malpractice[,]" *Dimitrakopoulos*, 203 A.3d at 144, the entire controversy doctrine does not apply to Count II.[8]

### b. *Res Judicata* and Collateral Estoppel

#### i. *Underlying Claims in Count II*

Prior to addressing the two preclusion doctrines of *res judicata* and collateral estoppel, the Court notes that nearly all the claims asserted by Plaintiff in Count II are duplicative of Count I. That is to say: in Count I, Plaintiff asserts sixteen (16) different specific bases for the purported breach of fiduciary duties committed by Defendant. (*Id.* ¶ 71.) In Count II, Plaintiff asserts eighteen (18) different bases for the purported legal malpractice purportedly committed by Defendant. (*Id.* ¶ 76.) Yet, the first sixteen (16) bases asserted in Count II are exact duplicates of the breaches alleged within Count I that the Court has already dispensed with as precluded under all three preclusion doctrines. While, as noted above, the entire controversy doctrine is not applicable to these claims in the legal malpractice context of Count II, the Court's analysis for the preclusion of these claims under the *res judicata* and claim preclusion doctrines within Count I remains. *See generally Middlebrooks & Shapiro, P.C. v. Esdale*, No. A-3285-02T1, 2005 WL 3691314, at *1 (N.J. Super. Ct. App. Div. Jan. 20, 2006) (describing the doctrines of *res judicata* and collateral estoppel in the legal malpractice context); *see also Crane*, 2024 WL 1070284; *Tadros v. City of Union City*, No. 10-2535, 2011 WL 1321980, at *7 (D.N.J. Mar. 31, 2011) (dismissing claims

---

[8] Because the entire controversy doctrine is inapplicable, the Court need not address when the legal malpractice cause of action accrued.

against defendants on *res judicata*, collateral estoppel, and entire controversy grounds and noting that these claims were "an attempt to take a second bite of the apple as all claims were already filed, or should have been filed, in state court because they arise out of the same controversy.")

Thus, the subset of claims within Count II remaining before the Court then are two general claims for legal malpractice against Defendant. The Court therefore must determine if these two remaining claims ("the Legal Malpractice Claims") are barred under either *res judicata* or collateral estoppel. The Legal Malpractice Claims are as follows:

> Failure to administer the Estate with a reasonable and proper understanding and analysis of the laws and regulations governing estate administration, including priority of decedent's Last Will and Testament and testamentary intent, federal and estate taxation and appeal procedures, federal tax liens, real estate tax sale certificates and foreclosure, priority of federal estate taxes and estate indebtedness, and *inter vivos* transfers;

> Failure to reasonably and properly conform to the laws and regulations governing estate administration including, but not limited to, priority of decedent's Last Will and Testament and testamentary intent, federal and estate taxation and appeal procedures, federal tax liens, real estate tax sale certificates and foreclosure, priority of federal estate taxes and estate indebtedness, and *inter vivos* transfers[.]

(Compl. ¶¶ 76(q)–76(r).) Thus, the Court now decides whether the Legal Malpractice Claims of Count II survive summary judgment under these two preclusion doctrines.

*ii.*    *Res Judicata*

*Res judicata* applies to a subset of the Legal Malpractice Claims. Specifically, the Legal Malpractice Claims are barred to the extent Plaintiff relitigates the issue of Defendant's understanding and analysis of the laws and regulations governing estate administration, testamentary intent, and *inter vivos* transfers in the federal court litigation. However, it does not

apply as it relates to Defendant's understanding and analysis of the laws and regulations governing federal and estate taxation and appeal procedures; federal tax liens; real estate tax sale certificates and foreclosure; the priority of federal estate taxes; and estate indebtedness.

To apply *res judicata*, (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one. *Watkins*, 591 A.2d at 598. As noted above, there was a final judgment on the merits in the probate proceedings. *See Grant III*. Additionally, the parties here are in privity. *See Allen*, 26 A.3d at 445; *see also* Restatement (Second) of Judgments § 39.

Thus, the question of the applicability of *res judicata* hinges on the following: whether the claim in the federal court actions grows out of the same transaction or occurrence. To the extent that Plaintiff's claims surround Defendant's legal expertise surrounding the estate administration, testamentary intent, and *inter vivos* transfers, they do. These issues were litigated in the proceedings in the probate part with Plaintiff raising the issues of estate administration, testamentary intent, and *inter vivos* transfers. *See Grant III*; (*see also* Ex. D to Def. Mot.) Specifically, Defendant raised issues regarding the third amended final informal accounting, the amounts of estate taxes to be paid by each estate beneficiary, and counsel's fees. *See Grant III,* at *1. Moreover, these issues were decided insomuch that the trial court made findings of fact and issued judgments on same which the Appellate Division considered and affirmed. *See Grant III.*

While it is true that the remaining portions of the Legal Malpractice Claims—that is, issues related to the administration of federal and estate taxation and appeal procedures; federal tax liens; real estate tax sale certificates and foreclosure; priority of federal estate taxes and estate indebtedness—grew out of the same transaction or occurrence at issue within the underlying state

court proceedings, in an abundance of caution and on this record, the Court cannot conclude that Plaintiff was able to present these claims in that action. While the *Grant III* court divided the tax liability amongst the beneficiaries—following the language of N.J.S.A 3B:24-6—Defendant's administration up to that point that might have contributed to the imposition of the tax liability arguably was not able to be presented. Thus, the Court is constrained to find that the imposition of *res judicata* on the discrete subset of the Legal Malpractice Claims dealing with the administration of federal and estate taxation and appeal procedures; federal tax liens; real estate tax sale certificates and foreclosure; priority of federal estate taxes and estate indebtedness is inappropriate as it relates to the post-2008 period given that these issues were arguably not able to be raised at the state court level. *See Watkins*, 591 A.2d at 599 (stating that if "a claim could not have been presented in the first action, then it will not be precluded in a later action.")

Accordingly, the Legal Malpractice Claims as they relate to Defendant's understanding and analysis of the laws and regulations governing estate administration of federal and estate taxation and appeal procedures; federal tax liens; real estate tax sale certificates and foreclosure; and the priority of federal estate taxes survive Defendant's assertion of *res judicata* at summary judgment.[9]

    *iii.*    *Statute of Limitations*

Finally, the Court raises an issue not briefed on summary judgment. However, it is an affirmative defense raised within Defendant's Answer: the affirmative defense of statute of limitations. (See ECF No. 5 at 9.) Inexplicably, Defendant failed to brief this issue in the motion presently before the Court.

---

[9] As with the analysis of *res judicata* with respect to the Legal Malpractice Claims in Count II, because the Court is unable to ascertain from the current record if Plaintiff was able to present the Legal Malpractice Claims in the state court actions, collateral estoppel is similarly inapplicable.

The statute of limitations in New Jersey governing legal malpractice is six years. *See* N.J.S.A. 2A:14-1. Upon its review of the summary judgment record—but without deciding the issue—the Court notes its serious reservations regarding the viability of the Legal Malpractice Claims. However, because this issue has not been briefed, the Court is constrained in its ability to examine these facts and decide this issue. The Court requests that the Honorable Tonianne J. Bongiovanni, U.S.M.J. convene the parties to determine how the matter shall proceed.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF No. 80) is **GRANTED** as to Count I and **GRANTED in part** and **DENIED in part** as to Count II in manner consistent with this Opinion. An appropriate Order will accompany this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: January 2, 2025